**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALLIANCE INDUSTRIES LIMITED**<br>        **and**<br>**ALLIANCE INDUSTRIES FZC**<br><br>        **v.**<br><br>**A-1 SPECIALIZED SERVICES &**<br>**SUPPLIES, INC.** | **CIVIL ACTION**<br><br>**NO.  13-2510** |

**Baylson, J.**                                                          **March 12, 2014**

### MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS OR STAY PURSUANT TO PRINCIPLES OF INTERNATIONAL COMITY AND THE DOCTRINE OF FORUM NON CONVENIENS

This case presents a $70 million international dispute among three companies owned by four family members, arising out of eleven leases for precious metals.  Plaintiffs and Defendant are parties to a Settlement Agreement regarding the transfer of shares in the companies.  The Settlement Agreement contains a release of claims provision that is currently the subject of a pending action in England.  Defendant moves to stay or dismiss Plaintiffs' Second Amended Compliant for reasons of international comity or *forum nonconveniens*.  Defendant argues that this action should be dismissed in favor of the English action, or stayed pending its outcome, because all of the parties to this case are parties to the English action. Plaintiff contends that the Settlement Agreement has no bearing on the leases, so the outcome of the English action construing the Settlement Agreement would not resolve this dispute.

This preface may seem similar to the plot of a Wagner opera, of a Dickens novel, or merely a law school exam question.  In the absence of any recent Third Circuit guidance on the forum nonconveniens issue in an international context, the Court will weigh concepts as ethereal as fairness and as concrete as discovery.

# I.     FACTUAL BACKGROUND

Plaintiff Alliance Industries Limited (Limited) is a company that buys, sells, markets and trades precious metals, and lends or leases its inventory of metals. Second Amended Complaint (SAC) at ¶ 7.   Limited is incorporated under the laws of Gibraltar with its principal place of business in the United Arab Emirates and is owned entirely by Ashok Kumar Khosla (Kumar). SAC at ¶ 2. Co-plaintiff Alliance Industries FZC (FZC) is also involved in trading and marketing precious metals, and is owned 50% by Kumar and 50% by his brother Suresh Khosla (Suresh). SAC at ¶ 3.  FZC is incorporated under the laws of the Sharjah Airport International Free Zone of the United Arab Emirates, which is also its principal place of business. SAC at ¶ 3.

The Second Amended Complaint alleges that Kumar is the General Manager and Director of FZC, which Defendant does not dispute.[1] SAC at ¶ 9.  Kumar and Suresh both reside in Mooresville, New Jersey, and assert that is where they store FZC and Limited corporate records, which are relevant to this case.  (ECF No. 34).

Defendant A-1 Specialized Services & Supplies (A-1) also markets and sells commodity-grade precious metals, and processes salvage automotive catalytic converters.  (ECF No. 34-1). A-1 is owned by three brothers, Kumar Khosla, Suresh Khosla, and Om Khosla, and Suresh's wife Leena Khosla.[2]  Stipulation at ¶  4.  A-1 is incorporated in Pennsylvania, which is also its principal place of business. Stipulation at ¶  4.

---

[1] Defendant did dispute this assertion in its opposition to Plaintiff's Motion to Amend its First Amended Complaint. (ECF No. 22).
[2] It is unclear from the pleadings, appended documents and stipulations what percentage of ownership each holds in A-1.

**A. Issues in this Case**

This dispute relates to eleven lease agreements for the lease of platinum and palladium, a precious metal used in catalytic converters.  Stipulation at ¶ 1.  Plaintiffs seek damages for breach of eleven lease agreements for precious metals, alleging A-1 failed to return the leased metals to Plaintiffs and failed to pay interest owed under the lease agreements. SAC at ¶ 1.  The first six lease agreements, dated between April 24, 2011 and January 18, 2012, were between FZC and A-1, "with the metal provided by Limited."  SAC at ¶¶ 12-13.  The other five lease agreements were between Limited and A-1 directly, and were signed between February 6, 2012 and September 26, 2012.  SAC at ¶ 14.  The last two lease agreements were signed on September 26, 2012, after the Settlement Agreement was executed.

On September 6, 2012 Limited, A-1, FZC, Suresh, Kumar, and Vivek Gulatee (a cousin of the brothers), signed a Settlement Agreement regarding the sale of Gulatee's ownership interest in Limited and FZC to Kumar and Suresh. The Settlement Agreement included the following release of claims provision:

> 3. RELEASE
> 3.1 Each Party agrees (for itself and on behalf of each of its Affiliates and Agents) that this Deed shall constitute full and final settlement, and irrevocable and unconditional waiver and release, of all and any Claims of that Party and its Affiliates and Agents against each other Party and each other Party's Affiliates and Agents.

The Agreement defines claims as:

> [A]ll claims or causes of action of any kind whatsoever (whether present or future, actual, prospective, or contingent, whether or not know[n] to any of the Parties at the date of this Deed, and including for any fees, costs, or expenses) in any jurisdiction[s] that relate to, arise from, or are otherwise connected to, or concern, the Prior Proposals, the Metal Transfers, or any other matter connected with, concerning or related to: (i) Alliance Limited, the SAIF-Zone Branch, Alliance FZC, or Alliance Limited's, the SAIF-Zone Branch's, or Alliance FZC's actual or proposed present, past or future, interests, investments, transactions, operations or business . . . .

One of the Settlement Agreement Recitals states:

> To enable the Buyback Documents and the Alliance FZC SPA [Share Purchase
> Agreement] to be executed, the Parties wish to settle, waive and release all claims
> that they may have as against each other that relate to, arise from, or are otherwise
> connected to or concern, the Prior Proposals, the Metal Transfers [between
> Limited and FZC], or any other matter connected with, concerning or related to (i)
> Alliance Limited, Alliance FZC or Alliance Limited's, or Alliance FZC's actual
> or proposed, present, past or future, interests, investments, transactions,
> operations or business, or (ii) any other transaction, arrangement, undertaking,
> understanding, agreement or contract (whether written or oral) between either
> both of the Khoslas and/or A-1 (on the one hand) and Gulatee (on the other hand),
> excluding the Alliance FZC SPA, or (iii) their respective shareholdings and
> directorships) and related director's duties) in Alliance Limited and Alliance FZC,
> in each case, on the terms of this Deed.

The Settlement Agreement includes a choice of law clause stipulating its terms are to be
construed under English law, and the parties agreed to submit to the jurisdiction of English
courts.  (Exhibit 17).

## B. Action in England

On April 25, 2013, A-1 and Suresh filed an action in the High Court of Justice of
England against Limited, FCZ, Kumar and Vivek Gulatee to determine the scope of the
Settlement Agreement release provision. (Exhibit 20).  The complaint in the English action
alleges that Suresh was to have acquired 60% interest in Limited, but the shares were never
issued. (Exhibit 21). The complaint further alleges that in an oral agreement related to the sale of
the shares, A-1 loaned Kumar $15 million to finance the acquisition of Gulatee's shares. (Exhibit
21).[3]

A-1 and Suresh seek a determination in the English action that the Settlement Agreement
release provision does not bar Suresh's claims to be issued the shares in Limited, and A-1's
claims against Kumar regarding the outstanding $15 million loan.  (Exhibit 20).  Suresh and A-1

---

[3] A-1 filed suit against Kumar in New Jersey Superior Court on March 20, 2013, demanding repayment of that $15
million loan.   (Exhibit 21; ECF No. 34-1).

argue in the English action that "the Settlement Agreement was intended to compromise [only] the disputes between the Brothers [Kumar and Suresh] on one hand and Vivek [Gulatee] on the other hand." (Exhibit 21).

Kumar and Limited filed a counterclaim on August 5, 2013 seeking a declaratory judgment that the Settlement Agreement barred both Suresh's claims to be issued the shares in Limited and A-1's claim for repayment of the $15 million loan. (Exhibit 22).

## C. Similarities and Differences in the case before this Court and the English Case

In the English case, there are additional parties who are not parties here. All the parties in this case are parties in the English action.

The Settlement Agreement appears to be more closely related to the dispute in England than to the dispute in his case. The Settlement Agreement pertains to the transfer of shares that are the subject of the dispute in the English action. In this action, A-1 contends that the release provision of the Settlement Agreement bars Plaintiffs' claims against it in this case. It appears the release provision of the Settlement Agreement and the involvement of some of the parties are the only areas of overlap between the two cases.

This case is a claim for monetary damages for breach of lease agreements. The English case seeks a declaratory judgment that the Settlement Agreement does not bar Suresh's claims to be issued shares in Limited and A-1's claims for the outstanding $15 million loan, and defendants assert counterclaims that the Settlement does bar those claims.

## II. PROCEDURAL HISTORY

On August 7, 2013, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint, asserting as an affirmative defense, among other contentions, that the Settlement

Agreement's release of claims provision bars Plaintiffs' claims related to the lease agreements. (ECF No. 16).  This Court granted Plaintiff's Motion for Leave to Amend its First Amended Complaint, and denied Defendant's motion to dismiss as moot on October 3, 2013.  (ECF No. 24).

Plaintiffs filed the Second Amended Complaint on October 8, 2013. (ECF No. 25).  The Second Amended Complaint added FZC as a co-plaintiff[4] and alleges breach of contract of the lease agreements between Limited and A-1, (Count I), breach of contract of the lease agreements between FZC and A-1, (Count II), breach of contract of the leases between Limited and A-1 of metals owned by FZC as a third-party beneficiary (Count III),  and unjust enrichment (Count IV). (ECF No. 25).

At a pretrial conference on October 22, 2013 this Court ordered the parties to provide a list of undisputed documents they agree should be considered part of the record in this case. (ECF. No. 28). This Court further ordered Defendant to file any motions to dismiss for forum nonconveniens separately from any motions to dismiss for failure to state claim.  (ECF No. 28).

On November 26, 2013, Defendant filed a Motion to Dismiss or Stay the Second Amended Complaint Pursuant to Principles of International Comity and the Doctrine of Forum Non Conveniens. (ECF No. 32).  Defendant contends this Court should stay or dismiss Plaintiffs' Second Amended Complaint under 12(b)(7) for forum nonconveniens or principles of international comity because the English action is pending and dispositive of the question whether the Settlement Agreement bars Plaintiff's claims. (EFC No. 32).

---

[4] As mentioned supra, note 1, Limited alleges Kumar is the General Manager and Director of FZC, and is able to join the company as  a party to the lawsuit. (ECF No. 19).  Although Defendant disputed this in its Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 22), it has not argued this point in the motion currently before this court.

The parties submitted a stipulation of facts—and twenty-two undisputed documents they agree should be part of the record for the purposes of Defendant's motion to stay or dismiss for forum nonconveniens or international comity. (ECF No. 32-2). The documents comprise all of the exhibits appended to the Second Amended Complaint (Exhibits 1-19),[5] and the complaint and counter-claim filed in the High Court of Justice of England (Exhibits 20-22).

Defendant also appended an affidavit that was filed in the English litigation, regarding service of process and proper forum for the English action. (ECF No. 32-5). Plaintiffs do not agree that this document should be part of the record (ECF No. 32-2).

On January 31, 2014, the Court issued an Order requesting the parties to submit letter briefs as to the choice of law issue. (ECF Nos. 37, 38).

### III.   THE PARTIES' ARGUMENTS

**A. International Comity**

Defendant contends the meaning of the Settlement Agreement, including the release clause, is currently before a High Court of Justice in England, and would dispose of nine of the eleven lease disputes.[6]

---

[5] The documents include the eleven lease agreements (Exhibits 1-11); a letter from FZC to Limited regarding metals balances (Exhibit 12); an excerpt from Limited's financial statements noting FZC is "another company owned and controlled by the [Limited] directors" (Exhibit 13); a Share Purchase Agreement for shares of FZC between Gulatee, Kumar, and Suresh, and a Share Buyback Agreement for shares of Limited between Gulatee and Limited (Exhibit 14); a Memorandum of Understanding related to the purchase of shares in Limited and FZC (Exhibit 15); a letter from FZC to Limited regarding payment of a percentage of leasing fees received from a third party (Exhibit 16); the Settlement Agreement (Exhibit 17); an email from Suresh for Kumar asking Kumar to issue him shares in Limited, to repay the $15 million loan, and to "write off Leases in Alliance Industries Limited and Alliance Industries FZC" among other requests (Exhibit 18); and a letter from Limited to A-1 confirming the lease balance as of December 31, 2012 (Exhibit 19).
[6] Defendant does not contend that the two lease agreements signed on September 26, 2012, after the Settlement Agreement was executed on September 6, 2012, would be barred by the release provision.

1. Parallel Actions

Defendant contends the English action is a parallel action, because both courts are asked to determine the scope of the release clause in the Settlement Agreement. Plaintiffs respond this action is not based on any term of the Settlement Agreement, because the relief sought is based solely on the eleven lease agreements in dispute. Plaintiffs further contend the course of dealing demonstrates the release provision has no bearing on the mineral leases in question in this case.

**B. Dismiss for Forum Non Conveniens**

Defendant asserts Plaintiffs' choice of forum deserves little deference because Plaintiffs are foreign entities. Defendant asserts the private interest factors weigh in favor of dismissal, because the other signatories to the Settlement Agreement and the lawyers who drafted it could be witnesses and London is a more convenient forum for them. Plaintiffs respond that none of these witnesses are relevant to this action, and dispute that the Settlement agreement has any bearing on this case. Plaintiffs further note that all of the parties to the lease agreements and the relative records are located in Pennsylvania and New Jersey.

Defendant argues the public interest factors favor dismissal because the English action is duplicative, and it would conserve judicial resources to adjudicate the dispute in the less crowded English courts. Defendant further contends the governing law is English law, and the dispute does not have any ties to the Eastern District of Pennsylvania, so there is local interest in the matter. Plaintiffs respond that Defendant breached the contracts in Pennsylvania and argue that Pennsylvania has a keen interest in the operations of a company conducting its business in Pennsylvania.

1. <u>Choice of Law</u>

      Plaintiffs assert Pennsylvania law governs.  Plaintiffs contend there is no conflict between Pennsylvania and English law, and if there was a conflict, the Pennsylvania choice of law analysis would select Pennsylvania law to govern.  Plaintiffs also argue the Defendant bears the burden of proving foreign law under 44.1.

      Defendant argues English law governs under the choice of law provision in the Settlement Agreement, and contends a choice of law analysis is unnecessary to dismiss on the basis of forum nonconveniens.  Defendant proposes the parties brief each legal issue to determine choice of law and proof of law, including expert affidavits on English law under 44.1.

**IV.   ANALYSIS**

**A. Comity**

      Dismissal or stay for principles of international comity is discretionary.  <u>Somportex Ltd. v. Philadelphia Chewing Gum Corp.</u>, 453 F.2d 435, 440 (3d Cir. 1971).  Comity is an affirmative defense, and the party seeking its application bears the burden of proof.  <u>Allstate Life Ins. Co. v. Linter Group Ltd.</u>, 994 F.2d 996, 999 (2d Cir. 1993).

      The Supreme Court and the Third Circuit have not ruled on any case with similar issues. Other circuit courts have taken two distinct approaches.  Gary B. Born & Peter B. Rutledge, International Civil Litigation in United States Courts 523 (2007).  Many courts, particularly those in the Second, Seventh, and Eleventh Circuits, have applied the <u>Colorado River</u> analysis for parallel proceedings in state and federal courts to the international context.  <u>Id.</u> at 524; <u>see, e.g.</u>, <u>Ingersoll Milling Machine Co. v. Granger</u>, 833 F.2d 680, 685 (7th Cir. 1987); <u>Laker Airways, Ltd. v. Sabena Belgian World Airlines</u>, 731 F.2d 909, 926-27 (D.C. Cir. 1984); <u>Royal</u>

9

& Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006).

The Supreme Court in Colorado River Water Conservation District v. United States emphasized

lower federal courts' obligation to exercise jurisdiction granted by Congress, and found

jurisdiction can only be declined in "exceptional circumstances."  424 U.S. 800, 818 (1976).

Some courts have instead applied the test used when parallel cases are pending in two

federal courts.  See Itel Corp. v. M/S Victoria U, 710 F.2d 199 (5th Cir. 1983), Ensign-Bickford

Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018 (D. Conn. 1993).  In Landis v. Northern

American Co., the Court held a "court's ability to stay an action is incidental to its inherent

power" and did not require a showing of exceptional circumstances.  299 U.S. 248 (1936).  The

Third Circuit has not weighed in on this issue, but under either approach the court must first find

the actions are in fact parallel.[7]

The D.C. Circuit noted that "parallel proceedings on the same in personam claim should

ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one

which can be pled as res judicata in the other."  Laker Airways, Ltd. v. Sabena Belgian World

Airlines, 731 F.2d 909, 926-27 (D.C. Cir. 1984) (citing Colorado River, 424 U.S. at 817; see

also  China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987) (same);

Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc., 466 F.3d 88 (2d Cir.

2006) (same).

1. The Actions Are Not Parallel

A proceeding is parallel when there is a  "'substantial likelihood that the [foreign]

litigation will dispose of all claims presented in the federal case.'" Lexington Ins. Co. v. Forrest,

263 F. Supp. 2d 986, 1002-03 n.13 (E.D. Pa. 2003) (quoting Lumen Constr. Inc. v. Brant Const.

---

[7] In Clientron v. Devon, __ WL __, No. 13-5634 (slip op.) (March 10, 2014) the undersigned recently denied a stay of proceedings in an action to enforce a foreign judgment based on an arbitration award in Taiwan where Taiwanese law controlled.  However, in that case there are questions as to the finality of the Taiwanese arbitration award.

Co., 780 F.2d 691, 695 (7th Cir. 1985)).  The "key inquiry is whether the [foreign] litigation will dispose of the claims before this Court."  Int'l Bus. Software, 440 F. Supp. 2d at 364-65.

In International Business Software Judge Sheridan found an Austrian proceeding was parallel because the defendant "raised counterclaims virtually identical to its claims here."  440 F. Supp. 2d at 364-65 (finding the Vienna court would retain jurisdiction over those counterclaims, even if the original claim was dismissed).  Since it was likely the Austrian proceeding would address the same claims pending before the Eastern District of Pennsylvania, Judge Sheridan found the Austrian proceeding was parallel.  Id.

In Lexington Judge Brody found an English proceeding was not parallel, because "the British court is not determining whether defendants' alleged fraud injured plaintiff. Rather, the question before the British court appears to be whether defendants' fraud obviates plaintiff's obligation to indemnify Flashpoint's creditors."  263 F. Supp. 2d at 1003.  Judge Brody also noted it was possible the British court would never reach the question of the defendants' fraud defense.  Id.  Accordingly, there was not a "substantial likelihood" the English action would dispose of all the claims presented.  Id. at n.13.

The English action Defendant contends is parallel to this litigation will address whether the Settlement Agreement release of claims provision bars Suresh's claim to a 60% interest in Limited and A-1's claim for repayment of a $15 million loan to Kumar.  Defendant raised the same release provision of the Settlement Agreement as an affirmative defense in this action, contending it the bars Plaintiffs' claims regarding the lease agreements.

While the same release provision is relevant to determining both disputes, it is unclear whether a ruling in the English action would advance the litigation in this case.  Even if the English court finds the release provision bars claims for the transfer of shares and the loan

11

repayment, that finding would not necessarily mean that the same provision would bar Plaintiff's breach of contract claims regarding the mineral lease agreements that are the subject of this litigation.  Moreover, it would not be necessarily inconsistent to find the claims in the English action are barred, but the lease agreement claims are not.

As Judge Sheridan in <u>International Business Software</u> noted, the central question is whether the foreign action could dispose of the claims at hand.   Even if the English court broadly interpreted the release clause, that ruling would not be dispositive in this case, because a court must still determine whether a different kind of claim is barred by the same provision.

Finally, Defendant concedes the release would only bar nine of the eleven lease agreements, because those nine leases were executed prior to the Settlement Agreement.  At this point in time, this Court cannot conclude that cases are parallel.  Further, it is doubtful that a judgment either in this court or in England would enjoy res judicata or collateral estoppel against any party in the English case.[8]  Since the English action is not substantially likely to dispose of the claims before this Court, Defendant's motion to dismiss or stay based on principals of international comity shall be denied.

**B. Forum Non Conveniens**

Defendant contends the English action addresses whether the Settlement Agreement bars Plaintiffs' claims so this Court should dismiss or stay this action in favor of the English proceeding.

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."

---

[8] The Settlement Agreement is likely to be important in both cases, but the impact is likely to be different on specific issues.

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007) (internal citations omitted).  Dismissal under *forum non conveniens* is within the district court's discretion.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981).  "[D]ismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons convenience supporting his choice."  Id. The Third Circuit has required district courts to  "supply specific reasons and develop adequate facts to support its decision." Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (holding a "district court abuses its discretion if it does not hold the defendants to their proper burden on the forum non conveniens motion or has clearly erred in weighing the factors to be considered").  "It is settled that the defendant bears the burden of persuasion as to all elements of the forum non conveniens analysis."  Id. at 44.

First, the court must find an adequate alternative forum exists.  Lacey, 862 F.2d at 43.  In Gulf Oil  Corp. v. Gilbert the Supreme Court enumerated a list of private and public interest factors to consider in determining whether to dismiss for forum nonconveniens.  Private interest factors include: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and . . . enforcibility [sic] of a judgment if one is obtained." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  Public interest factors include administrative challenges and congesting courts, imposing jury duty on those in a community with no relation to the action, interest in having local controversies decided at home, and familiarity with the governing law.  Id. at 508-09.

1. Deference to Plaintiff's Choice of Forum

The Third Circuit gives less deference to a foreign plaintiff's choice of forum than to the choice of a domestic plaintiff. Lacey, 862 F.2d at 45-6. But, it also held this reduced deference is "'not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule.'" Id. (quoting In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 821 F.2d 1147, 1164 n.26 (5th Cir. 1987)). "[T]he plaintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant. Id. at 43.

There is no dispute that England is an adequate alternative forum. The parties dispute whether Plaintiffs' choice of forum is entitled to any deference.[9] In Lacey the Third Circuit held the district court "should have accorded at least some weight to the plaintiff's choice" even though the plaintiff was an Australian company, because the only fora available were British Columbia and Pennsylvania, and both were foreign to the plaintiff and inconvenient. Lacey, 862 F.2d at 46. Here Plaintiffs are also faced with two foreign fora to bring their claims: Pennsylvania and England. Since Defendant is a Pennsylvania resident, the claims here are at least convenient to one of the parties. Following the Third Circuit, this Court should accord some deference to Plaintiffs' choice of forum.

2. Private Interest Factors

Plaintiffs contend all of the records and key witnesses relative to this dispute are located in Bucks County, Pennsylvania, where Defendant operates, and Moorestown, New Jersey, where the principals of Limited and FZC reside and store their corporate records. Pl. Br. at 16-17.

---

[9] Plaintiffs contend they are not foreign, because the principals of the corporations, Kumar and Suresh, both live in Moorestown, New Jersey. It is doubtful this factor is relevant to the deference analysis, because the Plaintiffs of record are corporations with their principal place of business in the United Arab Emirates.

Defendant does not make any representations regarding the ease of access to proof, aside from arguments that foreign witnesses may be called in this proceeding.

Defendant argues there are witnesses presently joined in the English action who would be inconvenienced by traveling to this venue namely, Vivek Gulatee.[10]  Although Defendant contends an interpretation of the Settlement Agreement would affect his rights, Gulatee is not a party to the lease agreements, so it is unclear how an interpretation related to those leases would impact Gulatee's rights.  Defendant does not ask this Court to determine the scope of the release provision for all potential claims.  Rather, Defendant raises it as a defense to the breach of contract claims in this action, which is a much more narrow issue.  Finally, Defendant operates within twenty miles of the federal courthouse, so it would not be a significant inconvenience to the principals to litigate in this forum.

There is no question that a judgment would be enforceable in either forum.  If the records and relevant witnesses are all in fact located in Pennsylvania and New Jersey, it would appear that the private interest factors favor litigating in this forum.

3. Public Interest Factors

The public interest factors are somewhat supportive of the foreign forum.  Defendant points to statistics suggesting English courts are less congested than the Eastern District of Pennsylvania, which Plaintiffs dispute.[11]  Regardless of the data's veracity, this argument presumes that the actions are in fact parallel.  As discussed above, it is unlikely the English action would dispose of all the claims in this case.  The question whether the release provision bars Plaintiffs' breach of contract claims is not presently before the High Court of England, but

---

[10] Travel between Philadelphia and London is neither difficult nor very expensive. Thus, the Court discounts the argument by Defendants that the attorneys who represented the parties at the time they drafted the agreement would be material witnesses, and this forum would be inconvenient for them to travel from London and Gibraltar.

[11] This Court expects to start a trial before the end of this year, or, if necessary, within one year.

is before this Court.  If this Court finds the Settlement Agreement bars Plaintiffs' claims in this case, but the English court reads the same provision to permit the stock transfer and loan claims, that could be a technically inconsistent reading of the lease.  But it is doubtful that such an inconsistency would have any practical effect.  A bar on some claims but not on others would not require incompatible actions by the parties.  Rather, some claims could proceed to litigation and others could not.

Finally, Defendant concedes the British action would only address nine of the eleven lease agreements, requiring continued litigation over the final two breach of contract claims. Accordingly, these disputes will have to be litigated in some court.

The second question is whether the action has any ties to Pennsylvania.  Defendants contend it does not, because the leases and the Settlement Agreement are subject to English law, and the minerals were to be delivered and returned in England.  In United States v. Goldberg, the Third Circuit found Pennsylvania had an interest in a wire fraud case because the funds transferred from New York to Wilmington passed through the Federal Reserve Bank in Philadelphia. 830 F.2d 459, 465 (3d Cir. 1987).  Here, the alleged beach of contract occurred in Pennsylvania where Defendant operates.  Pennsylvania does have an interest in Defendant's transactions because Defendant operates in the commonwealth.

a. Governing Law

The final question is the ease of applying the relevant law.   On January 31, 2014, the Court issued an Order requesting the parties to submit letter briefs as to the choice of law issue. (ECF Nos. 37, 38).  Plaintiffs assert Pennsylvania law governs.  Plaintiffs contend there is no conflict between Pennsylvania and English law, and if there was a conflict, the Pennsylvania choice of law analysis would select Pennsylvania law to govern. Defendant argues English law

governs. Defendant did not conduct a full choice of law analysis, but did note some instances where English contract law differs from Pennsylvania contract law.  Instead, Defendant relies on the choice of law provision in the Settlement Agreement, and contends a choice of law analysis is unnecessary to dismiss on the basis of forum nonconveniens.  Defendant proposes the parties brief each legal issue to determine choice of law and proof of law, including expert affidavits on English law under 44.1.

Familiarity with the governing law is one of the public interest factors considered in determining whether to dismiss.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947).  ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.").

The Supreme Court has held the need to apply foreign law was not controlling.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 260 (1981).  The Court found the district court in Piper Aircraft accurately analyzed the foreign law factor.  Id.  The district found it was unfamiliar with Scottish law and further found Scottish law applied to one of the plaintiffs' claims but Pennsylvania law applied to the other, so it would be confusing to present different legal standards to the jury.  Id.  In a footnote, the Supreme Court elaborated:

> Many forum non conveniens decisions have held that the need to apply foreign law favors dismissal. See, e. g., Calavo Growers of California v. Belgium, 632 F.2d 963, 967 (CA2 1980), cert. denied, 449 U.S. 1084 (1981); Schertenleib v. Traum, 589 F.2d, at 1165. Of course, this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate. See, e. g., Founding Church of Scientology v. Verlag, 536 F.2d 429, 436 (D.C. Cir. 1976); Burt v. Isthmus Development Co., 218 F.2d 353, 357 (5th Cir. 1955), cert. denied, 349 U.S. 922 (1955).

Id. at 260 n.29.  Although the Third Circuit reversed the district court's finding that Scottish law applied, the Supreme Court held the district court's analysis was an accurate application of

Gilbert.  Id.  Since all the other factors favored dismissal, the need to apply foreign law was not controlling.  Id.  (finding this "factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate.").

The Third Circuit routinely applies foreign law when forum non conveniens is denied. See, e.g., Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1228 (3d Cir. 1995) (applying Indian law to a negligence action after upholding the district court's denial of dismissal on forum nonconveniens grounds because a ten to twelve year delay did not render the alternative forum unavailable, but not discussing how the application of forum law weighed in favor of dismissal). The Fifth Circuit noted that foreign law may be more difficult to apply if the relief sought is "equitable or otherwise unusual relief peculiar to the foreign law," but it is not particularly complicated when the plaintiff simply seeks a money judgment.  Burt v. Isthmus Dev. Co., 218 F.2d 353, 357 (5th Cir. 1955) (reversing the district court's dismissal for forum non conveniens because "[t]here are, no doubt, difficulties in attempting to determine and apply foreign law; but the necessity to do so often occurs").

The Federal Rules of Civil Procedure provide a mechanism to determine foreign law in Rule 44.1 precisely because federal courts may and do apply the laws of other countries.  This alone is not the basis for dismissal under forum nonconveniens.  Rather, dismissal is appropriate when applying foreign law would be particularly onerous.  In Piper Aircraft the district court found it would confuse the jury to apply foreign law to one plaintiff but Pennsylvania law to the other plaintiff's claims.  But, in Bhatnagar the district court found the action did "not present substantial administrative difficulties" because even if the court had to apply Indian law "that law is within the mainstream of common law." Bhatnagar, 820 F. Supp. at 961-62 ("Moreover, the possible need to apply foreign law is not a sufficient basis on its own to warrant dismissal

when other relevant factors favor the plaintiff's choice of forum." (citing <u>Piper</u>, 454 U.S. at 260 n. 29)); <u>see also</u> <u>Burt v. Isthmus Dev. Co.</u>, 218 F.2d at 357 ("The fact that success or failure depends upon the law of Mexico does not, of itself, justify dismissal.").

Accordingly, the question for forum nonconveniens is not whether foreign law applies, but whether the application of foreign law would pose administrative difficulties. While there might some variation in English and Pennsylvania law, the parties' briefs on the conflicts of law show the central principals of contract interpretation are consistent, if not identical. This it to be expected, as our common law of contracts is based on English common law. Moreover, no translation from a foreign language is required, and unlike in <u>Piper Aircraft</u>, a jury would not be confused by applying different legal standards to the same issues. Since all of the other factors favor Pennsylvania as the forum, the need to consider any variations between English and Pennsylvania law is not such a strong administrative burden to outweigh those other factors.

## V.   CONCLUSION

The Court initially determines that a dismissal in this case would be inappropriate, and unfair to Plaintiffs, because of doubt that the English action is truly a parallel action. The decision as to whether to stay this case is a closer one, but the Court concludes that it would not be fair to Plaintiffs to issue a stay at this time, which would delay, for a possibly lengthy period, any resolution of Plaintiffs' claims, and the Court exercises its discretion to deny a stay.

One important reason for this conclusion is the Court concludes it is appropriate for the parties to begin discovery in this case.   It is well known that discovery in U.S. courts is much broader than in England, and the Court believes that a robust and fair exchange of information

between the parties is likely to be of value in the litigation of the disputes, whether in this Court or in England, or both.  With discovery in this case, the parties will be able to obtain information from each other, and third parties, in advance of trial, that they would not be able to obtain in England.  This process may also prompt constructive settlement discussions between the parties in this very complex and financially large litigation.

Another factor dictating against a stay is the representation, by plaintiff's counsel, that the English litigation, although started slightly before this litigation, has not advanced beyond the pleadings stage.  This Court believes that discovery can be completed this calendar year, and the case can be called for trial later this year or in early 2015.

An appropriate Order follows.

O:\CIVIL 13\13-2510 alliance industries v. A-1 specialized\13cv2510.mtd.denied.memo.3.10.14.docx