IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLIANCE INDUSTRIES LIMITED**<br>    and<br>**ALLIANCE INDUSTRIES FZC**<br><br>    v.<br><br>**A-1 SPECIALIZED SERVICES &**<br>**SUPPLIES, INC.** | **CIVIL ACTION**<br><br>**NO. 13-2510** |

Baylson, J.                                                                               April 8, 2015

**MEMORANDUM AND ORDER RE**
**ATTORNEY-CLIENT PRIVILEGE AND DISCOVERY ISSUES**

**I.     Introduction**

Brothers fighting about corporate ownership and control describes this case. Less than ideal, but frequently encountered. Cain and Abel in the Bible, through the Greek myth of Antigone (Polynices & Eteocles), Wagner's Ring (Mime & Alberich; Fasolt & Fafner), to the tragedy of our own civil war, brothers fighting serves as a metaphor about human nature out of control.

The issue presented in this case is the extent to which the attorney-client privilege extends to communications between two brothers and their closely held family corporations, and their attorneys. The underlying facts of the case have been set forth in a Memorandum dated March 12, 2014 (ECF 39) concerning defendant's motion to dismiss or stay this case. In brief, this is an international dispute over precious metals leases involving three closely held family corporations.

Plaintiffs are Alliance Industries Limited ("Limited"), a Gibraltar corporation, and Alliance Industries FZC ("FZC"), a United Arab Emirates corporation. Limited is wholly owned

and controlled by Ashok Kumar Khosla ("Kumar"). FZC is owned 50 percent by Kumar and 50 percent by his brother, Suresh Khosla ("Suresh").

Defendant is A-1 Specialized Services & Supplies, Inc. ("A-1"), a Pennsylvania corporation. A-1 is owned 32 percent by Suresh, 5 percent by Suresh's wife Leena Khosla, 32 percent by Om Khosla, a brother of Suresh and Kumar, and 31 percent by Kumar.

These closely held family corporations are now at odds. Plaintiffs claim that A-1 is in breach of precious metals leases because A-1 has failed to return the leased metals to Plaintiffs. Plaintiffs assert their damages are approximately $80 million. A-1 contends that the leases were supposed to be extinguished as part of a larger business restructuring of the Khoslas' business interests following the purchase of Limited and FZC by Suresh and Kumar from a third party, Vivek Gulatee.[1] A-1 also contends that as part of this transaction Kumar was supposed to transfer an ownership stake in Limited to Suresh.[2] However, A-1 claims that once Kumar gained full control of Limited, he reneged on the agreement to transfer a portion of Limited to Suresh and refused to cancel the leases. Plaintiffs dispute this account

The facts germane to the issue of privilege have been developed in a number of briefs with numerous attachments filed by the parties, a series of depositions, excerpts of which have been presented to the Court, and a hearing on March 31, 2015.

There are three attorneys who have been involved in this case, only two of whom are to be subject to depositions. The parties are in dispute about the precise contours of each lawyer's

---

[1] At the time of this transaction, Mr. Gulatee owned 80 percent of the shares of Limited and 50 percent of the shares of FZC. In January 2012, Kumar had purchased 20 percent of the shares of Limited and 50 percent of the shares of FZC from another third party, Sudhir Chopra, for $15 million.

[2] The purchase of Mr. Gulatee's shares in Limited was structured as a share buyback by Limited pursuant to a Share Buyback Agreement dated September 17, 2012. ECF 144, Def's. Br., Ex. 37. Suresh purchased Mr. Gulatee's shares in FZC directly via a Share Purchase Agreement dated September 17, 2012.

representation, including precisely whom the lawyer was representing and the date ranges when the lawyer represented those clients. The attorneys are as follows:

    A. Isaac Massias is an attorney based in Gibraltar. Mr. Massias has submitted an affidavit in which he acknowledges representing Kumar, Suresh, and Limited, but denies ever representing A-1. ECF 144, Def.'s Br., Ex. 38. A-1 seeks to depose Mr. Massias and to obtain communications involving Mr. Massias which Plaintiffs claim are privileged.

    B. John Bullock is an attorney based in Connecticut. It is undisputed that Mr. Bullock represented A-1 prior to the events that are the subject of this litigation. Plaintiffs contend that Mr. Bullock then represented Kumar, and they submit an email from Mr. Bullock to A-1's counsel in which Mr. Bullock denies representing A-1 with respect to Plaintiffs. See ECF 149 & 150, Pls.' Supp. Br., Ex. A. A-1 argues that Mr. Bullock continued to represent A-1, Kumar, and Suresh. A-1 seeks to depose Mr. Bullock and to obtain communications involving Mr. Bullock which Plaintiffs claim are privileged.

    C. Pratap Dange is an attorney based in the United Arab Emirates. It is undisputed that Mr. Dange represented Kumar and Suresh. A-1 contends that he also represented A-1. Because of Mr. Dange's location in the U.A.E., he is not subject to deposition in this case. However, A-1 seeks communications by several individuals to or from Mr. Dange which Plaintiffs claim are privileged.

    Additional details about these individuals and the dates of their representation of the various companies were placed on the record by counsel at the hearing on March 31, 2015.[3]

---

[3] The documents listed on Plaintiffs' privilege log also include an email from Kumar to Najila Barrouche, an attorney based on the United Arab Emirates who briefly represented Kumar in 2013. There is no evidence in the record that Ms. Barrouche represented anyone other than Kumar, and A-1 indicated at the hearing on March 31, 2015, that it did not challenge Plaintiffs' claim of privilege as to that email. Accordingly, the Court finds the communication between Ms. Barrouche and Kumar to be privileged.

## II.     Attorney-Client Privilege

The attorney-client privilege applies if the following elements are satisfied:  (1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of obtaining or providing legal assistance for the client.  In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007) (citing Restatement (Third) of the Law Governing Lawyers § 68 (2000)).  Under settled Third Circuit law, a party asserting that a communication is privileged—in this case the Plaintiffs—has the burden of satisfying the elements of privilege.  In re Grand Jury Empanelled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).  A party claiming wavier—in this case A-1—has the burden of proof as to waiver.  Rhoads Indus., Inc. v. Building Materials Corp. of Am., 254 F.R.D. 216, 224 (E.D. Pa. 2008); see also Prewitt v. Walgreens Co., No. 11-2393, 2013 WL 6229154, at *1 (E.D. Pa. Dec. 2, 2013); Sampson v. Sch. Dist. of Lancaster, 262 F.R.D. 469, 478 (E.D. Pa. 2008).

Privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976).  Because the privilege obstructs the truth-finding process, it should be applied "only where necessary to achieve its purpose." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007).  The privilege applies only to legal advice, and not where the lawyer provides non-legal business advice.  Id.

The Court must determine which law to apply in this diversity action.  To determine which law governs, the Court refers to the choice-of-law rules in the jurisdiction in which it sits, Pennsylvania.  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007).  Under Pennsylvania choice-of-law doctrine, a court first examines whether there is any conflict between the laws of the jurisdictions with an interest in the case.  Id. at 230 ("If two

jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary." (emphasis in original)). Only if the court determines there is a conflict does the court undertake a deeper analysis of the governmental policies underlying each law, the interests of each jurisdiction in having its law applied, and the contacts with each jurisdiction. Id. at 230-31.

To the extent that New Jersey law could apply because Suresh and Kumar are New Jersey residents, the Court will apply Pennsylvania law because there is no conflict between Pennsylvania and New Jersey privilege law. See Cooney v. Booth, 198 F.R.D. 62, 64 n.3 (E.D. Pa. 2000); see also Harrisburg Auth. v. CIT Capital USA, Inc., 716 F. Supp. 2d 380, 384-85 (M.D. Pa. 2010) (citing Hammersmith, 480 F.3d at 230) ("[T]he first step in Pennsylvania's choice of law methodology is to determine whether an 'actual conflict' exists.").

Plaintiffs contend that any privilege between Isaac Massias, a Gibraltar lawyer, and Kumar and Suresh should be governed by Gibraltar law. See ECF 75, Pls.' Letter to Court, Sept. 12, 2014. In determining an issue of foreign law under Fed. R. Civ. P. 44.1, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Under Rule 44.1, the parties "carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 440 (3d Cir. 1999). "Where parties fail to satisfy either burden the court will ordinarily apply the forum's law. Id. at 441. Plaintiffs have submitted no evidence regarding Gibraltar privilege law. A-1 has submitted affidavits from a Gibraltar lawyer, Elliot John Phillips, describing Gibraltar law. ECF 144, Def.'s Br. Ex. 29. Because Plaintiffs have not met their burden of showing that Gibraltar law applies and Mr.

5

Phillips's statement indicates there are no significant differences between Gibraltar law and Pennsylvania law on the attorney-client privilege issue, the Court will apply Pennsylvania law to assertions of privilege regarding Mr. Massias.

### III. The Parties' Arguments

A-1 asserts that it has the right to take the depositions of Mr. Massias and Mr. Bullock and to obtain communications involving Mr. Massias, Mr. Bullock, and Mr. Dange for a number of reasons. First, A-1 contends that the lawyers were representing A-1, not just Suresh and Kumar in their personal capacities, during the relevant time period. Accordingly, A-1 claims it is entitled to waive the attorney-client privilege. Second, A-1 has presented a letter dated September 11, 2014, from Suresh where he waived any attorney-client privilege he held with Mr. Massias. ECF 144, Def.'s Br., Ex. 40. Third, A-1 argues that the lawyers have knowledge of important facts relevant to the merits of this case that were not exclusively learned by them through attorney-client communications and, A-1 contends, are relevant to matters placed at issue by Plaintiffs. Fourth, A-1 contends that many of the communications at issue were not maintained in confidence but were consistently shared with third parties and disclosed to A-1 during discovery.

Plaintiffs dispute that any of the lawyers represented A-1 during the time period relevant to this dispute. Plaintiffs further contend that Kumar has not indicated any intent to waive the privilege as to his communications with the lawyers, and that Suresh cannot waive the privilege for Kumar. Plaintiffs contest Suresh's waiver, alleging that he lacked the capacity to make such a waiver and that the Court should disregard his testimony. Finally, Plaintiffs argue that the communications were maintained in confidence. Any third parties included on the

communications were included for the purpose of facilitating legal advice, Plaintiffs claim, and the disclosure of communications to A-1 was inadvertent and followed by a claw-back request.

## IV. Facts

There are substantial disputes in the record about whether the attorneys represented A-1 or Suresh and Kumar in their personal capacities and at what times such representation occurred.

### A. Isaac Massias

As noted, Mr. Massias has submitted an affidavit in which he acknowledges representing Kumar, Suresh, and Limited, but denies ever representing A-1. ECF 144, Def.'s Br., Ex. 38. An examination of numerous documents and deposition transcripts submitted by A-1 indicates the following:

    1. Rajesh Seth, the current president and CEO of A-1, stated that Mr. Massias represented A-1. Id., Ex. 5, 281:4-15. Mr. Seth also testified that Mr. Massias served as Limited's corporate secretary. Id. 281:8-9.

    2. Meena Jerath, an accountant who worked for A-1, Suresh, and Kumar, testified that Mr. Massias represented A-1, Kumar, and Suresh. Id., Ex. 6, 293:21-295:24; 252:15-253:15. Ms. Jerath also indicated that Mr. Massias provided legal advice to Limited, and Mr. Massias affirms he did so. Accordingly, Mr. Massias may have represented two opposite parties in this case. If he did so, either one could assert a waiver of the privilege. See Teleglobe, 493 F.3d at 366.

    3. Ms. Jerath further testified that she had many conversations with Mr. Massias and received most of the emails he was sent. ECF 144, Def.'s Br., Ex. 6, 293:21-295:24. Ms. Jerath's testimony is corroborated by numerous communications produced by A-1 between Mr. Massias and Suresh and Kumar on which she is copied. Id., Ex. 28. For example, a May 7,

2012, email from Kumar addressed to Mr. Massias with a copy to Suresh and Ms. Jerath, shows that Mr. Massias may have at that time represented the opposing parties in this case. Id. A June 14, 2012, letter from Kumar to Mr. Massias with copies to Ms. Jerath, Suresh, and Mr. Dange, requests advice on a draft of a proposed communication to Vivek Gulatee, which once again shows that Mr. Massias may have represented multiple parties who are now on opposite sides in this case. Id.

       4. Ms. Jerath also testified that the transactions between Limited and A-1 were not at arm's length, which raises possible inferences of fraud that could not be cloaked by an asserted attorney-client privilege. See id., Ex. 6 140:16-141:12; In re Chevron Corp., 650 F.3d 276, 291-92 (3d Cir. 2011) (discussing the crime-fraud exception to the attorney-client privilege).

       5. Leena Khosla ("Leena"), Suresh's wife and a 5 percent owner of A-1, testified that Mr. Massias represented A-1, Suresh, and Kumar. Id., Ex. 8 146:13-147:7. Leena further testified that she was on phone conversations with Mr. Massias. Id. 569:16-23.

       6. Suresh testified Mr. Massias did work for A-1, Kumar, and Suresh, but he also testified that Mr. Massias was Kumar's lawyer. Id., Ex. 4, 491:5-22. Suresh also testified that Mr. Massias represented Limited after representing A-1 and was the attorney for Limited in December 2011. Id. 491:13-23; ECF 146 & 147, Pls.' Br., Ex. A, 492:20-293:7.

       7. Kumar testified it was possible that Mr. Massias represented A-1 and described one instance when Mr. Massias did provide legal advice to A-1. ECF 144, Def.'s Br, Ex. 10, 335:18-22; 349:3-7; 354:6-13.

       8. A-1 paid an invoice from Mr. Massias for legal services dated October 11, 2012. Id., Ex. 18 & 19.

9.  Sameer Khosla ("Sameer"), Kumar's son, also testified regarding the June 14, 2012, email from Kumar to Mr. Massias, which copies Suresh, Mr. Dange, and Ms. Jerath, in which Suresh is described as the "eminent majority owner" of Limited and "the person who has guided the company since its inception and guided all major day-to-day decisions of the company."  Id., Ex. 28.  Sameer testified that this description of Suresh was a negotiating tactic.  He also testified that Kumar and Suresh were splitting apart at this time, and that they were going to do away with the Memorandum of Understanding, dated April 30, 2012, (ECF 144, Def.'s Br., Ex. 20), which stated that Suresh was to own 60 percent of Limited and Kumar 40 percent following the purchase of Gulatee's shares.  Id., Ex. 9 354:15-355:3.  Sameer noted that it was his impression that Suresh wanted to keep A-1 and walk away from Limited.  Id.

**B.  John Bullock**

1.  It is undisputed that Mr. Bullock represented A-1 prior to the dispute at issue in this case.  Kumar testified that Mr. Bullock received a retainer from A-1 until approximately 2011.  Id., Ex. 10, 355:21-356:19; 357:6-358:20, 359:2-8.  Suresh testified that Mr. Bullock represented A-1, Kumar, and Suresh.  Id., Ex. 4 491:13-18; 510:5-11.  Mr. Bullock acknowledges that he represented A-1 until June 2011.  ECF 149 & 150, Pls.' Supp. Br., Ex. A.

2.  Mr. Bullock contends he never represented A-1 with regard to Plaintiffs.  Id.  Mr. Bullock notes that he represented Kumar in his personal capacity in March 2012 and provided legal assistance in regard to the acquisition of Plaintiffs by Kumar.  Id.  Mr. Bullock states that he did not consider himself a representative of A-1 when providing this advice.  Id.  However, Mr. Bullock wrote to Mr. Gulatee on April 2, 2012, on behalf of Kumar and Suresh.  ECF 144, Def.'s Br., Ex. 11.

3. Sameer testified that Mr. Bullock represented A-1 and subsequently represented Kumar. Id., Ex. 9 191:6-17. Sameer further testified that he was privy to some of the communications between Mr. Bullock and Kumar. Id. 192:2-6.

4. Leena testified that Mr. Bullock represented A-1. Id., Ex. 8 566:10-15.

5. Ms. Jerath testified that Mr. Bullock represented A-1, Suresh, and Kumar. Id., Ex. 6 292:11-293:4. Ms. Jerath stated further that she participated in discussions between Kumar and Mr. Bullock, including a March 2012 meeting at Kumar's house between Mr. Bullock, Suresh, and Kumar. Id. 292:11-14. Ms. Jerath also noted that Patrick McGilligan, an A-1 employee, was also present at this meeting. Id. Ms. Jerath stated that Mr. Bullock took steps to protect the privilege regarding the March 2012 meeting, but not at other times when she was in discussions with him, Suresh, and Kumar. Id. 292:15-293:20.

6. Kumar stated that the March 2012 meeting led to Mr. Bullock writing a letter on behalf of Suresh and Kumar to Mr. Gulatee. Suresh and Kumar were seeking to buy his ownership stake in Limited and FZC. Id., Ex. 10, 363:6-365:16; id., Ex. 11.

**C. Pratap Dange**

1. The record includes an engagement letter dated April 27, 2012, from Mr. Dange to Suresh, as the power of attorney holder for Kumar, showing that Mr. Dange was retained to represent Suresh and Kumar in the purchase of Mr. Gulatee's shares in Limited and FZC. Id., Ex. 7. Plaintiffs have produced another engagement letter dated June 1, 2012, from Mr. Dange to Kumar, showing that Mr. Dange was retained to represent Kumar in the purchase of shares in Limited and FZC. ECF 149 & 150, Pls.' Supp. Br, Ex. C.

2. Kumar testified that Mr. Dange represented Kumar and Suresh jointly. ECF 144, Def.'s Br., Ex. 10 336:16-337:3. But Kumar noted that Suresh asked Mr. Dange for legal

10

advice regarding A-1. Id. 385:1-20, 387:4-11, 401:4-23, id., Ex. 12 & 13. Kumar also testified that Ms. Jerath participated in almost every conversation with Mr. Dange. Id., Ex. 10, 284:14-285:4.

  3. Mr. Seth testified that Mr. Dange represented A-1, Kumar, and Suresh. Id., Ex. 5, 177:5-8.

  4. Ms. Jerath testified that Mr. Dange represented A-1, Suresh, and Kumar. Id., Ex. 6, 258:8-11. The record also shows that Ms. Jerath was copied on numerous communications between Mr. Dange and Suresh and Kumar. Ms. Jerath also testified that Suresh and Kumar jointly intended to acquire Limited and FZC and write off the leases. Id. 301:7-302:5.

  5. Leena testified that A-1 reimbursed Kumar for legal bills that Kumar paid to Mr. Dange. Id., Ex. 8, 568:3-569:3.

  6. Sameer testified that he was forwarded numerous communications between Mr. Dange and Suresh and Kumar. Id., Ex. 9, 475:13-475:4, 477:13-14.

  7. Sameer also testified that Mr. Dange referred to Limited and FZC being held in constructive trust for Suresh and Kumar, but that this was not true and was a "bullying tactic" to convince Mr. Gulatee to sell his shares in Limited and FZC to Kumar and Suresh. Id. 334:11-335:10.

  8. The record also includes an email dated September 9, 2012, from Mr. Dange to Suresh, Kumar, and Ms. Jerath, in which Mr. Dange confirms his understanding that Suresh was to own 60 percent of Limited upon the purchase of Mr. Gulatee's shares, alludes to disagreements between Suresh and Kumar, and indicates his inability to act as the lawyer for either Suresh and Kumar individually against the other. See id., Ex. 28.

**V.    Analysis**

After review of the many deposition excerpts, there are substantial contradictions in the testimony as to which attorney was representing which client or clients at various times. Further, review of the documents that have been presented, in addition to the deposition transcript excerpts, leads to the following findings:

A.  Given the conflicts in the deposition testimony and conflicts ascertained from other documents in the record, the Court notes that there are substantial factual disputes among the parties on issues underlying the attorney-client privilege dispute. In reviewing the evidence, the Court bears in mind that Plaintiffs bear the burden of showing that the privilege should apply.

B.  Suresh gave testimony at times contradicting himself and others. Plaintiffs' position is that Suresh's mental state, and sometimes confusing deposition testimony, requires the Court to find him not credible and/or incompetent and to disregard his testimony. At the March 31, 2015, hearing, Plaintiffs' counsel stated that the Court should disregard Suresh's testimony as unreliable based on the written record. In the alternative, should the Court find the written record an insufficient basis on which to disregard Suresh's testimony, Plaintiffs asked the Court to hold an evidentiary hearing and have the party with the appropriate burden of proof present witnesses so that the Court could determine whether the attorney-client privilege should apply.

A-1's position is that although Suresh was contradictory and unclear at times, there are no grounds for the Court to simply disregard his testimony.

The Court concludes there is no need for an evidentiary hearing. Plaintiffs took no steps to secure an independent medical examination of Suresh or to otherwise back up their contention that his testimony is unreliable and should be disregarded. Suresh was sworn along with other witnesses, and the Court will accept his testimony on the privilege issue, but with caution.

However, the Court need not rely on Suresh's testimony or alleged privilege waiver alone to decide whether the attorney-client privilege applies. The Court has significant corroborating documentary evidence and depositions of numerous individuals from which to make that determination.

C. The record is clear that Suresh and Kumar were both represented by Mr. Massias and Mr. Dange at material times involved in the disputes in this case. Although Mr. Bullock contends he only represented Kumar with regard to Plaintiffs, there is evidence that Mr. Bullock was representing Suresh and Kumar at this time. ECF 144, Def.'s Br., Ex. 11.

D. There is conflicting evidence regarding whether Mr. Massias, Mr. Dange, or Mr. Bullock represented A-1 at the material times in this dispute or only represented Suresh and Kumar in their personal capacities. Although Mr. Massias and Mr. Bullock explicitly deny representing A-1, the Court must examine the evidence in the record and cannot simply rely on an attorney's statement. See Transcont'l Refrigerated Lines, Inc. v. New Prime, Inc., No. 13-2163, 2014 WL 2471936, at *5 (E.D. Pa. June 3, 2014) (concluding that despite law firm's insistence that it only represented president and sole shareholder of closely held corporation, the evidence indicated that the law firm represented the corporation with respect to an asset purchase agreement). The deposition testimony of Mr. Massias and Mr. Bullock would likely be helpful to the Court in determining whether these lawyers in fact represented A-1.

E. Communications between Suresh, Kumar, and their attorneys, bearing on the issues of this case, are very relevant to determining the credibility of the principals and the legal consequences of the decisions leading up to this litigation. At the time Suresh and Kumar were purchasing Mr. Gulatee's stakes in Limited and FZC, the attorneys were representing both brothers. However, now Kumar and Suresh are essentially at odds and taking conflicting

positions in this case. Accordingly, fairness requires that each one be able to call upon the recollection of their counsel in terms of developing testimony of the relevant facts for use in dispositive motions and/or at trial. See In re Teleglobe Commc'ns Corp., 493 F.3d 345, 366 (3d Cir. 2007) ("When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable."). Although it is true, as Plaintiffs point out, that Kumar and Suresh are not parties to this litigation, this case involves closely held companies that Kumar and Suresh control. See In re Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 124-25 (3d Cir. 1986) (noting that a corporation can only act through its agents). There is ample evidence in the record that Suresh and Kumar were not scrupulous about respecting corporate formalities, including emails sent to counsel from corporate email accounts, the fact that A-1 paid Mr. Massias's legal bill, testimony that A-1 reimbursed Kumar for his payment of Mr. Dange's legal expenses, and the involvement of A-1's accountant and other A-1 employees in communications with the lawyers.[4]

F. Even if the Court were to accept at face value Plaintiffs' contention that the lawyers only represented Suresh and Kumar in their personal capacities and did not represent A-1, it is obvious from the documents that both Kumar and Suresh shared their communications with the lawyers with others, including Ms. Jerath, the accountant for A-1, Suresh, and Kumar, Leena, Suresh's wife and a 5 percent owner of A-1, and Sameer, Kumar's son, whose role is unclear. This sharing of communications with third parties indicates a lack of effort by both Kumar and Suresh to keep the communications with their attorneys confidential. See In re Chevron Corp.,

---

[4] At the March 31, 2015 hearing, in response to questions from the Court regarding the Teleglobe case, Plaintiffs' counsel indicated that Kumar and Suresh might fall under the common interest privilege, as opposed to the joint client privilege. But the common interest privilege only applies when parties have separate counsel, whereas the joint client privilege applies when parties share the same counsel, as is the issue in this case. Teleglobe, 493 F.3d at 362-66.

14

650 F.3d 276, 289 (3d Cir. 2011) (noting that communications made in the presence of third parties are not privileged).

Under settled law, an essential hallmark of a privileged communication is that the client and the attorney intended it to be confidential between them. Id.; Teleglobe, 493 F.3d at 361 (noting that communications made in the presence of third parties or subsequently shared with third parties are not privileged because such disclosure "signals that the client does not intend to keep the communication secret"). In this case, there are numerous instances in which communications with attorneys were shared or disclosed among a broader group of people. The Court is not necessarily being critical in this regard, but merely stating a fact, which leads to a conclusion that the clients did not intend these communications to be confidential and, therefore, that no attorney-client privilege attached to those communications.

However, Plaintiffs take the position that the involvement of third parties in the communications should not destroy the attorney-client privilege because those third parties were only involved in the facilitation of legal advice. Cottillion v. United Refining Co., 279 F.R.D. 290, 299 (W.D. Pa. 2011). Under the conduit theory, the privilege still applies to "communications between independent contractors and counsel where the outside consultant functions like an employee in providing information which facilitates the obtaining of legal advice." Id. (citations omitted).

Plaintiffs have not met their burden of showing that the conduit theory applies here. First, Ms. Jerath served as an accountant for Suresh, Kumar, and A-1. At the October 31, 2014, hearing, Plaintiffs' counsel withdrew Plaintiffs' claim of privilege as to 69 communications which included Ms. Jerath. See ECF 144, Def.'s Br., Ex. 28 & 35. Plaintiffs conceded that Ms. Jerath was actually on those emails on behalf of A-1. Regarding the meetings and

15

communications currently at issue in this case, Plaintiffs have presented no evidence from which the Court could determine that Ms. Jerath's inclusion in these meetings or on these communications was in a non-A-1 capacity. Second, Plaintiffs have presented no evidence regarding Sameer's role in the businesses or the transactions at issue that would enable the Court to conclude that Sameer served in some way to facilitate the provision of legal advice to Kumar, Suresh, or the companies they owned. Third, Mr. McGilligan is an A-1 employee, so his involvement in any communications with an attorney by Suresh and Kumar—allegedly in their personal capacity—would destroy privilege, unless A-1 were also deemed to be a client of the attorney. The overall conclusion an objective reader of the factual record reaches is that the principals and their associates, and attorneys, readily communicated with each other without regard for the protections afforded by the attorney-client privilege.

The factual record resembles, not physically but conceptually, a large house where Kumar and Suresh both live and chatter with the three lawyers, and the others mentioned above, on the stairs and in the hallways, about corporate ownership and control, with smatterings of legal advice occurring from time to time. This scenario does not preserve the attorney-client privilege, and plaintiffs cite no case supporting their arguments.

G. Upon review of the record, it is apparent that Mr. Massias, Mr. Dange, and Mr. Bullock have knowledge of relevant facts which they learned outside of communications with Suresh and Kumar, whom they acknowledge as their clients. The privilege only protects communications, not facts, from discovery. Upjohn Co. v. United States, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); City of Phila. v. Westinghouse Elec. Corp., 205 F. Supp. 830, 831 (E.D. Pa. 1962). Accordingly, the attorney-

client privilege would not under any circumstances prevent A-1 from asking the lawyers about certain facts they had come to learn, outside of confidential client communications, about the transactions at the heart of this dispute. At this point, the record does not show any truly confidential attorney-client communications, so counsel must divulge all communications relevant to the issues which they received from their clients, and their responses.

H. A-1 also asserts as grounds for waiver the fact that Plaintiffs' counsel produced a number of privileged communications that were indicated at items 1-11 on a November 10, 2014, privilege log supplied to the Court in this case. A review of these documents shows that only one of them is clearly labeled as privileged. Many of the other documents at issue were shared with third parties, as discussed above, or were in the possession of A-1 and produced by A-1 in this case.

Plaintiffs assert that this production was inadvertent and assert that the clawback provisions of Fed. R. Evid. 502 require A-1 to return the documents. Although the Court has followed this clawback principle previously, Rhoads Indus., 254 F.R.D. at 226, the Court declines to enforce the clawback provision at this time, largely because of the conclusions above that the clients in this dispute did not intend these communications to be privileged.

I. The conflicting evidence as to who Mr. Massias, Mr. Bullock, and Mr. Dange were representing and when, the evidence that Suresh and Kumar shared their attorney communications with third parties, the breakdown in the relationship between these two brothers, this subsequent litigation between the closely held corporations they control, and the possibility that the lawyers have knowledge of relevant facts obtained outside of confidential client communications, lead the Court the conclude that Plaintiffs have not met their burden of showing the attorney-client privilege applies at this time.

**VI.    Remedy re Privilege—Procedure**

In view of the above discussion, the Court will **GRANT** Plaintiffs' motion to compel as to all communications with Mr. Massias, Mr. Dange, and Mr. Bullock.  The Court will permit counsel to inquire of Mr. Massias and Mr. Bullock at their depositions as to all communications they had with individuals, clients, and all others involved, and they must answer the questions, under oath, and in full.  Because both attorneys are likely outside the subpoena power of this Court, their deposition testimony may be introduced at trial if relevant and admissible.

The following facts are to be established by counsel during these depositions as to each representation:

- Whom did you represent?
- What dates did you represent that client?
- Was the representation in a personal or corporate capacity or both?  What factors lead you to believe that you represented the client in either a personal or corporate capacity or both?
- Was there an engagement letter?  When did it terminate?
- To whom did you send the bills?  When?  Who paid the bills?

The following facts are to be established as to each client:

- Did you maintain communications in confidence?
- Were third parties copied on correspondence, included on phone conversations, or present at meetings?  If yes, who was copied?  Why were they copied?  What was their role?  Where did the communication occur?

As stated at the March 31, 2015 hearing, Plaintiffs' counsel may note an objection on privilege at the deposition, but may not instruct the witness not to answer on grounds of attorney-client privilege.  If the record subsequently supports a claim of privilege as to any of the communications or testimony, the Court may reconsider this ruling as to specific communications and preclude use of specific communication or testimony, if it deserves to be considered privileged, at summary judgment or at trial.

This ruling is for discovery purposes only. It is not necessarily a ruling as to the admissibility of attorney testimony or of any documents at trial, and, as noted, it is without prejudice to Plaintiffs' renewing their privilege arguments as to any testimony or documents found to be privileged at summary judgment or at the non-jury trial.

## ORDER

A. Following extensive briefing and a hearing on March 31, 2015, the Court will **GRANT** A-1's motion to compel deposition testimony (ECF 95 & 96) because Plaintiffs have not met their burden of showing that an attorney-client privilege existed as to the communications with Mr. Massias and Mr. Bullock, whose depositions have been noticed in this case, and Mr. Dange. Therefore, Mr. Massias and Mr. Bullock are ordered to give testimony at their depositions concerning communications and transactions between and among the principals in this case, without prejudice to Plaintiffs' ability to note objections for the record and to renew argument at summary judgment or at trial that attorney testimony or communications should be regarded as privileged. The Court will **DENY** A-1's motion to compel as to Ms. Barrouche.

B. As to A-1's motion to compel discovery (ECF 133 & 134), at the March 31, 2015, hearing, counsel for A-1 and Plaintiffs indicated that they had resolved some of the disputes at issue, but that they had been unable to reach a resolution regarding two matters: (1) Plaintiffs' instruction to Kumar and Sameer at their depositions not to answer certain questions on relevance grounds and (2) Plaintiffs' refusal to produce certain supporting documentation for Plaintiffs' financial statements.

As indicated at the hearing, the Court will **GRANT** A-1's motion to compel as follows:

1. Plaintiffs shall not instruct Kumar and Sameer not to answer questions, on relevance grounds, concerning the defense that Kumar and Suresh had agreed to cause Plaintiffs

to extinguish the leases in connection with a larger business restructuring. Any additional deposition of Kumar and Sameer shall be limited to 90 minutes.

      2. Supporting documentation for those financial statements Plaintiffs have produced in this case is discoverable and shall be produced by Plaintiffs. A-1 will pay the cost of the production of these supporting documents.

      **BY THE COURT:**

      /s/ Michael M. Baylson

      _____
      **MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL 13\13-2510 alliance industries v. A-1 specialized\13cv2510.memo.mtc.4.7.15.docx