IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLIANCE INDUSTRIES LIMITED** <br> and <br> **ALLIANCE INDUSTRIES FZC** <br><br> v. <br><br> **A-1 SPECIALIZED SERVICES & SUPPLIES, INC.** | **CIVIL ACTION** <br><br> **NO. 13-2510** |

**MEMORANDUM RE PRIORITY OF DISTRIBUTION**

**Baylson, J.**                                                                                                    May 3, 2016

In this complex case, the parties dispute ownership of valuable mineral rights and other assets. Following a settlement and standstill agreement among the parties, intervenor Leena Khosla has moved for an order directing priority of distribution (the "Motion for Priority", ECF 235). Intervenor Om P. Khosla ("Om") moved to join in Leena's Motion for Priority. (ECF 237). Plaintiff Alliance Industries, Limited ("Limited") moved for miscellaneous relief and for a hearing (ECF 246), which took place April 25, 2016.

### I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

Depictions of disputes arising from filial discord originate with Cain and Abel in the Garden of Eden, attracted Wagner's attention in *Das Rheingold*, when Fafner kills his brother, Fasolt, in a dispute over the Rheingold, and produced John Steinbeck's elegant observation that sibling rivalry is "the best-known story in the world because it is everybody's story . . . the symbol story of the human soul . . . the story of mankind."[1]  Here, the story is thankfully non-violent, and revolves around three brothers: Om, Suresh Khosla ("Suresh"), and Ashok Kumar

---

[1]   John Steinbeck, *East of Eden* (Penguin Classics ed.) 270.

1

Khosla ("Kumar" and, together with Om and Suresh, the "Khosla Brothers"). The Khosla Brothers and Suresh's wife, Leena, together comprise the ownership interest in A-1 Specialized Services & Supplies, Inc. ("A-1"). The A-1 shareholder structure is as follows: Om (32% interest); Suresh (32% interest); Kumar (31% interest); and Leena (5% interest). All four shareholders of A-1 are also directors, and the Khosla Brothers were formerly officers of A-1. Suresh currently controls A-1.

The Khoslas' interests expand beyond A-1. Brothers Kumar and Suresh each have a 50% ownership in plaintiff Alliance Industries FZC ("FZC"). Kumar wholly owns and controls plaintiff Limited. Currently, Kumar is the Manager of FZC.

This lawsuit began on May 7, 2013, by Alliance filing a three-count complaint against A-1 alleging breach of contract and unjust enrichment. (ECF 1). On October 8, 2013, Limited and FZC (which joined as a party-plaintiff), filed a Second Amended Complaint alleging claims of unjust enrichment and breach of contract. (ECF 25). After extensive discovery, motion practice and partial denial of Limited's Motion for Summary Judgment on August 19, 2015 (ECF 188; see also Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc., No. 13-2510, 2015 WL 4943471 (E.D. Pa. Aug. 19, 2015)),the matter was set for trial to begin on September 26, 2015 (ECF 209). On September 16, 2015, the parties informed this Court that they had reached a settlement in principle, which was contained in a September 15, 2015 Confidential Settlement Agreement and Mutual Releases (the "Settlement Agreement"). Accordingly, the case was marked closed, the proceedings stayed, and the Court, at the request of all parties, retained jurisdiction for a period of one year. (ECF 212). Pursuant to the Settlement Agreement, the Court entered judgment in favor of Limited and against A-1 in the amount of $20,000,000.00 and dismissed FZC's claims with prejudice. (ECF 213).

Several months thereafter, on January 25, 2016, pursuant to a Praecipe filed by Limited, a Writ of Execution was issued against defendant A-1 on January 25, 2016. (ECF 217). On February 4, 2016, Limited filed a motion for an Emergency Order Authorizing Forced Entry Requested by U.S. Marshall in Aid of Execution. (ECF 218). A-1 moved for a Stay of Execution. (ECF 221). Both Leena (ECF 226) and Om (ECF 227) moved to intervene. After a hearing on February 11, 2016, the parties came to an agreement pursuant to which the Court entered an Order (the "Status Quo Order"), pursuant to which Limited obtained a judgment lien in all of A-1's personal tangible property identified in the Inventory (as defined in the Subordination Agreement). (ECF 233). This Judgment Lien has a priority that relates back to January 26, 2016, the date of issuance of the Writ of Execution to the United States Marshall Service in this matter. (ECF 233). In addition, the Judgment Lien was explicitly made "subject in all respects to the September 15, 2015 Subordination Agreement entered into by and between Om P. Khosla, Leena Khosla, [Limited] and [A-1]." (ECF 233).

## II.     SUMMARY OF THE PARTIES' CONTENTIONS

**A.     Filed Briefs**

Intervenor-Plaintiff Leena moves for an order providing for the distribution of any proceeds from an execution sale pursuant to Limited's Judgment lien in the following priority: (1) the First Priority Lien held by Om; (2) the Second Priority Lien held by Leena; and (3) the Third Priority Lien held by Limited.

Plaintiff Limited disagrees and contends that there are not just the three priority liens provided in the Subordination Agreement. Limited argues that there is, in addition to those three priority liens, a fourth priority judgment lien in favor of Limited with an original and still outstanding principal balance of $20,000,000.00 – the Judgment Lien. Limited argues that any

execution sale of A-1's personal property would be pursuant to its *fourth priority* Judgment Lien, and therefore subject to the First Priority Lien held by Om, the Second Priority Lien held by Leena, and the Third Priority Lien held by Limited. Limited contends further that Pennsylvania law provides that these three senior liens survive any execution sale. Thus, Limited is entitled to receive any cash proceeds from the sale through its junior-most fourth priority Judgment Lien, while the First Priority, Second Priority, and Third Priority Liens continue to encumber the personal property sold.

Limited also contends that at such execution sale pursuant to its Judgment Lien, Limited would be entitled to purchase A-1's personal property by credit bid. Personal property purchased by credit bid would be held, in trust, by Limited for senior lienholders Om and Leena in accordance with Section 3.8 of the Subordination Agreement. Limited argues that the Subordination Agreement nowhere mandates for payment, in cash, to Om and Leena in satisfaction of their First and Second Priority Liens. As such, if Limited sought fit to purchase A-1's personal property at an execution sale by credit bid, Limited "**only** obligation to Om and Leena [would be] to promptly deliver a portion of such Personal Property with a value sufficient to repay A-1's indebtedness to Om and Leena." (Limited Br. at 8).

Leena disagrees with Limited's characterization of its Judgment Lien as a lien, separate and distinct from Limited's Third Priority Lien as identified in the Subordination Agreement. Leena contends that Limited is attempting to bypass the strictures of the Subordination Agreement by relying on this fictional "fourth priority" lien. According to Leena, the Subordination Agreement specifically provided that Limited's judgment lien would be considered part of its Third Priority debt. Furthermore, Leena argues that the terms of the Subordination Agreement accounted for the possibility of a credit bid, and that if Limited were to

4

use a credit bid at an execution sale, Limited must pay Om the balance of his First Priority Lien and Leena the balance of her Second Priority Lien.

**B.     Court-Compelled Answers and Oral Argument**

Because the parties' briefing raised a number of issues, the Court then posed a series of questions to Limited (ECF 261) to which Limited provided substantive answers ("Limited's Answers", ECF 267).  The Court expresses its appreciation to Limited and its counsel for its candor in stating its position on the interpretation of the complex documents entered into by the parties in this case.

In its questions to Limited, the Court asked Limited to, *inter alia*, describe the relation of its "fourth priority" lien to the liens at issue in the Subordination Agreement, and the practical operation of a distribution from A-1 in the event of an execution sale.  Limited's Answers reiterated that "if Limited completed a U.S. Marshall Sale and thereby obtained ownership of A-1's physical property via a credit bid, Limited would be obligated to hold such property in trust and promptly pay or deliver A-1 property to Om and Leena until they are Paid in Full, which, in the case of delivery of A-1 property, requires their acceptance that such property is of a value sufficient to satisfy their A-1 debts." (ECF 267 at 6).  In response to this Court's inquiry at oral argument on April 25, 2016, counsel for A-1, Leena, Suresh, and Om indicated their approval of Limited's Answers.

### III.     DISCUSSION

The parties having resolved the priority of distribution as a result of additional discussions among counsel—much appreciated by this Court—Leena's Motion for Priority will be dismissed as moot.

The Court is well aware that attention may now turn to the impact, if any, of the judgment rendered in <u>Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc.</u>, No. 13-2930), in which this Court issued a Memorandum (ECF 78) and Order (ECF 79) granting the motion by Impala Platinum Holdings Limited and Impala Refining Services Limited (collectively, "Impala") to lift the stay in that action, confirm the final arbitration award rendered in the London Court of International Arbitration and enter judgment.  Further proceedings may take place in this Court or in Bankruptcy Court, however, no further decision by this Court is required at this time.[2]

### IV.  CONCLUSION

For the foregoing reasons, the Court denies Leena's Motion for Priority as moot in light of the parties' expressed agreement with Alliance's Answers.

An appropriate Order follows.

---

[2] The Court is aware that a motion is currently pending to strike the pleadings submitted by Impala in support of their intervention in *this* action. (ECF 274).  The Court has every intention of promptly rendering a decision as to that motion when the briefing has been completed.